## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2015, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Isaiah H. Rogers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 30, 2015

Court of Appeals Case No.
84A01-1505-CR-410
Appeal from the Vigo Superior
Court.
The Honorable David R. Bolk,
Judge.
Cause No. 84D03-1501-F1-227

**Shepard, Senior Judge**

Isaiah H. Rogers appeals his convictions for one count of rape[1] as a Level 1 felony and one of domestic battery[2] as a Class A misdemeanor. We affirm.

## Issue

The sole issue presented by this appeal is whether the trial court committed fundamental error by requiring the victim, S.R., to testify against Rogers, her husband.

## Facts and Procedural History

The couple fell to arguing at their residence during the evening hours of December 4, 2014. S.R. was about to shower when Rogers confronted her, demanding to know where she had been for the past three days, suspecting that she had been unfaithful. According to S.R., in the past, if either of them thought the other might have been unfaithful, that person could request to examine and smell the genitals of the other for evidence of infidelity. Rogers made such a request, but the two began to get physical. They moved among various rooms with Rogers throwing punches at S.R.'s head and upper chest area. With one of those swings, Rogers pushed S.R. down, and she suffered a broken finger.

---

[1] Ind. Code § 35-42-4-1 (2014).

[2] Ind. Code § 35-42-2-1.3 (2014).

[4] At trial, S.R. claimed that everything was moving too fast to remember. She did recall being on the couch and, after rising, having blood flowing out of her genitals onto her legs. S.R. previously had problems with her I.U.D., but had not bled that day prior to the altercation.

[5] S.R. went to the emergency room, where she was observed to be hysterical, crying, screaming in pain, her sweatpants saturated in blood on the back side. Dr. Rabina Rai, the first physician to examine S.R., noted that she was battered and bleeding profusely. Three of her fingers were swollen and the middle finger was fractured. Lacerations on both sides of her vagina cut almost to the muscle layer and extended the complete length of the vaginal canal. S.R. told Dr. Rai and Nurse Jenna Hardiman that Rogers had used his finger to penetrate her several times and caused those injuries. Neither Rai nor Hardiman believed that an I.U.D. could have caused S.R.'s injuries, but both believed fingers could do so.

[6] Given the life-threatening nature of S.R.'s injuries, she was referred to Dr. Kathleen Couthino, an obstetrician-gynecologist. S.R. recounted for Dr. Couthino what Rogers had done to her. She said that she could not be sure but that Rogers might have inserted an object into her vagina. Dr. Couthino believed that a great deal of force was used to cause the injuries. S.R. declined a rape kit exam, but underwent surgery to repair her vaginal walls.

[7] The State filed various charges against Rogers. While he was in jail, he made a telephone call, which was recorded, during which he admitted he had stuck his

fingers inside S.R. Rogers also testified at trial and agreed that his fingernails were long and that they were the same length at the time of the alleged offenses.

[8] A jury found Rogers guilty on multiple counts, and the trial court entered judgments of conviction against Rogers for rape and domestic battery. Rogers received concurrent executed sentences of thirty years for rape, a Level 1 felony, and one year for domestic battery, a Class A misdemeanor.

## Discussion and Decision

[9] The Code provides that spouses shall not be required to testify regarding communications made to each other. Ind. Code § 34-46-3-1(4) (1998). S.R. gave testimony in a discovery deposition consistent with the criminal allegations against Rogers, but by the time of trial sought to have those charges dropped. Rogers appeals contending that the trial court committed fundamental error by instructing S.R. to testify after she had invoked the privilege. He frames the issue that way because when the State asked permission to treat S.R. as a hostile witness, Rogers stated he did not object.

[10] After examining the unique position of the marital privilege among other privileged communications, our Supreme Court has indicated the privilege prohibits "requiring a spouse to testify as to *confidential* marital communications, but does not bar the spouse from testifying if the spouse chooses to do so." *Glover v. State*, 836 N.E.2d 414, 422 (Ind. 2005) (emphasis added).

[11] Without reference to any marital communications, confidential or not, the record contains abundant evidence to sustain the conviction. Like a hysterical S.R. reporting to the emergency room bleeding profusely from her vaginal area, telling a treating nurse and a physician, and an OB-GYN, that Rogers had stuck his fingers inside her vaginal area causing her pain.

[12] The jury also heard S.R. had not previously experienced difficulties with her birth control that day and had not bled until after Rogers' actions. The medical personnel were convinced that while an I.U.D. could not cause the damage to S.R.'s vagina, fingers could have. Emergency surgery was required to repair S.R.'s vaginal walls. Couthino believed that much force had been used to cause the type of injuries S.R. suffered.

[13] And then there was Rogers's telephone communication giving detail about his attack.

[14] S.R. also told the nurse and doctors that Rogers had hit her in the head and upper torso region. Three of S.R.'s fingers were swollen and her middle finger was fractured after he knocked her down.

[15] To prove domestic battery, the State was required to establish beyond a reasonable doubt that Rogers knowingly or intentionally touched S.R., his spouse, in a rude, insolent, or angry manner resulting in bodily injury. *See* Ind. Code § 35-42-2-1.3(1). As for rape, the State was required to prove that Rogers penetrated S.R.'s vagina with his finger or another object resulting in serious bodily injury to S.R. *See* Ind. Code § 35-42-4-1(b)(3). Sufficient evidence

exclusive of marital communications exists in the record to support Rogers's convictions. And, indeed, most of what S.R. said at trial was not actually confidential marital communication as described by *Glover*.

We find no fundamental error here in the trial court's decision to require S.R. to testify at trial after asserting the privilege.

# Conclusion

In light of the foregoing, we affirm the trial court's judgment.

Affirmed.

Crone, J., and Altice, J., concur.